IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERRANCE XAVIER PEREZ, | : | Civil No. 3:22-cv-1145 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| J. WETZEL, et al., | : | |
| Defendants | : | |

**FILED**
**SCRANTON**

MAY 08 2023

PER_____ S/
          DEPUTY CLERK

## MEMORANDUM

Plaintiff Terrance Xavier Perez ("Perez"), an inmate who was housed, at all relevant times, at the State Correctional Institution, Huntingdon, Pennsylvania ("SCI-Huntingdon"), initiated this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as Defendants are former Secretary J. Wetzel, Superintendent J. Rivello, Lieutenant J. Jenkins, and retired Unit Manager G. Ralston. Presently before the Court is Defendants' Rule 12(b) motion (Doc. 13) to dismiss. Perez failed to respond to the motion and the time for responding has now passed.[1] Therefore, the motion is deemed unopposed and ripe for resolution. For the reasons set forth below, the Court will grant the motion.

---

[1] Perez was directed to file a brief in opposition to Defendants' motion and was admonished that failure to file an opposition brief would result in Defendants' motion being deemed unopposed. (Doc. 18) (citing M.D. PA. LOCAL RULE OF COURT 7.6).

I.  **Background**

A.  **Allegations of the Complaint**

On June 20, 2021, Perez alleges that Defendant Jenkins failed to follow COVID-19 safety protocols by allowing two separate cohorts to intermingle in the dayroom. (Doc. 1, p. 4). Perez asserts that the intermingling in the dayroom placed the inmates' health and safety at risk by "negligently being deliberately indifferent to cross contamination." (*Id.*). Perez alleges that because Defendant Jenkins failed follow these COVID-19 safety protocols, an inmate entered his cell with a weapon and attacked him. (*Id.* at p. 4). Perez asserts that he filed a grievance related to this incident and Defendants Wetzel, Rivello, and Ralston denied the grievance. (*Id.*). Perez also contends that Defendants Rivello and Ralston failed to house the attacker on the correct unit due to his history of violence and mental health issues. (*Id.*). For relief, Perez seeks monetary relief and requests proper training for prison staff. (*Id.* at p. 5).

B.  **Summary of the DOC's Response to COVID-19**

The Department of Corrections ("DOC") has provided publicly available information regarding its response to the COVID-19 pandemic. *See* COVID-19 and the DOC, https://www.cor.pa.gov/PAges/COVID-19.aspx (last accessed May 5, 2023). In-person visitation is available at all DOC facilities, with updated visiting rules. *See* Inmate Visitation, https://www.cor.pa.gov/family-and-friends/Pages/Inmate-Visitation.aspx (last accessed May 5, 2023).

The DOC has undertaken the following mitigation efforts with respect to inmates: suspension of in-person visitation when necessary, expansion of video visitation, enhanced screening and quarantine for new inmates, masking recommended, increased availability of cleaning supplies, reduced cohort size and new zoning requirements to prevent the spread of COVID-19.  *See* COVID-19 and the DOC, https://www.cor.pa.gov/PAges/COVID-19.aspx (last accessed May 5, 2023).  With respect to staff members, all facilities conduct "[e]nhanced screening and temperature checks for all individuals entering a facility." *Id.* Masks are recommended for staff and personal protective equipment is provided to all staff. *Id.*

As of May 5, 2023, there are zero active inmate cases of COVID-19 at SCI-Huntingdon.  *Id.* (select "COVID-19 Dashboard" hyperlink and search for SCI-Huntingdon). There have been 429 inmate cases overall, with 9 deaths, at SCI-Huntingdon.  *Id.*  3,292 inmates have been tested at SCI-Huntingdon.  *Id.*  As of May 5, 2023, there is one active staff case, with 552 cumulative staff cases at SCI-Huntingdon.  *Id.*

DOC officials have also reduced the inmate population where they can by maximizing parole releases, reviewing parole detainers for individuals in county jails and state prisons, expediting the release process for anyone with a pending home plan, and reviewing inmates who are beyond their minimum sentences.  *See* COVID-19 and the DOC, https://www.cor.pa.gov/PAges/COVID-19.aspx (last accessed May 5, 2023).

The DOC represents that on-site vaccination is available to the inmate population and staff at every state correctional institution in Pennsylvania and COVID-19 boosters are available to inmates and staff. *Id.*

The DOC's demobilization plan addresses various aspects of inmate life, guided by the governor's statewide reopening plans. *See* https://www.media.pa.gov/pages/corrections_details.aspx?newsid=463 (last accessed May 5, 2023). Facilities move through the different levels of quarantine depending on the number of positive cases of COVID-19 at the prison at the time. *Id.*

## II.    Legal Standard

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)

4

(internal citations and quotation marks omitted).  A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint:  First, the court must take note of the elements a plaintiff must plead to state a claim.  Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted).  This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment

5

>would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

Id.

## III.   Discussion

### A.   Lack of Personal Involvement of Defendants Wetzel, Rivello, and Ralston

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

>Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

Individual liability can be imposed under § 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005)

6

(quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208. A claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. *Id.* at 1207.

Under the most liberal construction, Perez's complaint fails to state a claim for relief against Defendants Wetzel, Rivello, and Ralston. It appears that Perez seeks to hold Defendants Wetzel, Rivello, and Ralston liable based upon their responses to a grievance. (Doc. 1, p. 4). However, the "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." *Flanagan v. Shively*, 783 F. Supp. 922, 931-32 (M.D. Pa. 1992), *aff'd*, 980 F.2d 722 (3d Cir. 1992). Thus, any claims against Defendants Wetzel, Rivello, and Ralston that are premised on their responses to a grievance must fail because dissatisfaction with a response to an inmate's grievance does

7

not support a constitutional claim. See *Brooks v. Beard*, 167 F. App'x. 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to an inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation); *Alexander v. Gennarini*, 144 F. App'x 924 (3d Cir. 2005) (concluding that involvement in the post-incident grievance process is not a basis for liability).

The only other reference to Defendants Rivello and Ralston is that they allegedly failed to house an inmate on the correct unit. (Doc. 1, p. 4). However, the complaint does not specify what role, if any, Defendants Rivello and Ralston played in failing to follow COVID-19 safety protocols. The Court finds that Perez fails to adequately allege that Defendants Rivello and Ralston were involved in the alleged wrongdoing. *See, e.g., Hudson v. City of McKeesport*, 244 F. App'x 519, 522 (3d Cir. 2007) (affirming dismissal of defendant because complaint did not provide any basis for a claim against him).

To the extent that Walston seeks to hold any of these three Defendants liable based on their supervisory roles, this claim also fails. It is well-established that officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *See Rode*, 845 F.2d at 1207. Accordingly, insofar as Perez's claims against Defendants Wetzel, Rivello, and Ralston rely on a *respondeat superior* theory of liability, they are entitled to dismissal from this action.

For all the foregoing reasons, Defendants' motion to dismiss will be granted based on a lack of personal involvement of Defendants Wetzel, Rivello, and Ralston.

## B.   Eighth Amendment Claims

Defendants seek dismissal of Perez's complaint on the basis that he has not pled plausible Eighth Amendment claims against them. The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. See *Wharton v. Danberg*, 854 F.3d 234, 247 (3d Cir. 2017). There are several types of Eighth Amendment claims, including claims alleging: denial of, or inadequate access to, medical care; exposure to adverse conditions of confinement; the use of excessive force; and failure to protect from assaults by other inmates. An Eighth Amendment claim includes both objective and subjective components. See *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Under the objective prong, the Court must consider "if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Wilson*, 501 U.S. at 298). However, "[w]hat is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause depends upon the claim at issue." *Id.* The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298.

### 1.   *Conditions of Confinement Claim*

In order to succeed on a claim as to one's conditions of confinement, a plaintiff must establish that: "(1) he was incarcerated under conditions imposing a substantial risk of

9

serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to his health and safety, and (3) the defendant-official's deliberate indifference caused him harm." See *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2015). "[T]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Therefore, conditions of imprisonment violate the Eighth Amendment only if they, "alone or in combination . . . deprive inmates of the minimal civilized measures of life's necessities." See *id.* at 347. Such necessities include "adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson*, 503 U.S. at 9. However, "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019) (quoting *Wilson*, 501 U.S. at 304 and *Rhodes*, 452 U.S. at 347).

Perez failed to establish that the conditions at SCI-Huntingdon amount to unconstitutional punishment. As previously recognized, "the prison setting raises unique concerns regarding the spread of the COVID-19 virus since, by their very nature, prisons are confined spaces unsuited for social distancing." *Rodriguez-Francisco v. White*, No. 1:20-CV-1076, 2020 WL 4260766, at *3 (M.D. Pa. July 24, 2020). However, the "inability to

practice social distancing is not, in and of itself, sufficiently serious to implicate a violation of the Eighth Amendment." *Id.*

There is no indication that SCI-Huntingdon is not complying with the modified parameters of operation set forth *supra*. The measures taken by the facility indicate that Perez's conditions of confinement are not unconstitutionally overcrowded or unsanitary. Instead, they have been effective at curbing the introduction or spread of COVID-19 at SCI-Huntingdon. SCI-Huntingdon has been testing for the COVID-19 virus. As of May 5, 2023, 3,292 inmates have been tested, with 429 positive results. *See* COVID-19 and the DOC, https://www.cor.pa.gov/PAges/COVID-19.aspx (select "COVID-19 Dashboard" hyperlink and search for SCI-Huntingdon) (last accessed May 5, 2023). Staff members have also been tested, with 552 testing positive. *Id.* Finally, as of May 5, 2023, 1,455 inmates and 206 staff members at SCI-Huntingdon have been fully vaccinated. *Id.* In light of the strict measures taken by the DOC to curb the spread of COVID-19, Perez failed to identify a sufficiently serious deprivation that rises to the level of an Eighth Amendment violation. His single allegation that two housing tiers were intermingled on one occasion is insufficient to state a plausible claim for relief. The Court will dismiss this Eighth Amendment claim.

### 2. *Failure to Protect Claim*

The Eighth Amendment requires a prison official to "take reasonable measures to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. While a prison official has a duty to protect prisoners from attacks by other prisoners, not

11

every injury suffered by a prisoner at the hands of another translates to constitutional liability for the official responsible for the prisoner's safety. *Id.* at 833-34. An inmate making a failure to protect claim has the burden of proof to establish that a prison official both knew of and chose to disregard an "excessive risk to inmate health or safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 837). The United States Court of Appeals for the Third Circuit has further held that the knowledge requirement is subjective, "meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Id.*; *see Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997). Actual knowledge can be proven circumstantially where the general danger was obvious. *Farmer*, 511 U.S. at 842. For example, if the prisoner-plaintiff

> presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

*Id.* at 842-43 (quotation marks and citation omitted). However, "a defendant can rebut a prima facie demonstration of deliberate indifference either by establishing that he did not have the requisite level of knowledge or awareness of the risk, or that, although he did know of the risk, he took reasonable steps to prevent the harm from occurring." *Beers-Capitol*, 256 F.3d at 133.

Here, Perez describes one isolated incident where cohorts mixed, and he was attacked by another inmate. He also alleges that Defendants Rivello and Ralston housed an inmate on the wrong housing unit. Perez does not allege that he received any threats of violence prior to the incident, he does not allege that he informed anyone that he was in imminent danger of being attacked, and he does not allege that he knew the identity of the attacker. Notably, Perez does not assert that Defendant Jenkins was actually aware of the existence of an excessive risk to his safety by allowing the tier 2 unit to mix with the tier 3 unit. Nor does he assert that Defendants Rivello and Ralston were actually aware of the existence of an excessive risk to his safety by housing an inmate on certain unit. Perez's claim is not supported by sufficient factual averments and the complaint does not allege enough to support a plausible failure to protect claim. *See Proctor v. James*, No. 18-1698, 2020 WL 2065948, at *2 (3d Cir. Apr. 29, 2020) (affirming dismissal of a complaint when a plaintiff failed to allege that there were any previous problems between inmates or that the perpetrator of the assaults had a history of violent attacks).

Even if defendants were aware that an inmate had a history of violence, the Third Circuit has held that the risk that "an inmate with a history of violence might attack another inmate for an unknown reason" is too speculative to maintain a failure to protect claim against prison officials. *Bistrian*, 696 F.3d at 371, *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020). In the instant case, Perez wholly failed to allege that the assault was the product of "longstanding, pervasive, well-documented, or previously noted

13

tensions between" himself and the other inmate. *Blackstone v. Thompson*, 568 F. App'x 82, 84 (3d Cir. 2014). Accordingly, the Court will dismiss Perez's failure to protect claim.

## C. Negligence Claim

Defendants also seek dismissal of Perez's claim of negligence, arguing that the doctrine of sovereign immunity bars this claim against state employees. (Doc. 14, pp. 13-15). Defendants are entitled to sovereign immunity with respect to Perez's state law claim as it is beyond dispute that "[t]he Department of Corrections is an agency of the Commonwealth and the Defendants, as employees of an agency of the Commonwealth, are entitled to the protection afforded by sovereign immunity." *McGrath v. Johnson*, 67 F.Supp.2d 499, 511 (E.D. Pa. 1999) (citing *Maute v. Frank*, 441 Pa. Super. 401, 402, 657 A.2d 985, 986 (1995) (state prison officials enjoy sovereign immunity); *Robles v. Pennsylvania Dep't of Corrections*, 718 A.2d 882, 884 (Pa. Commw. Ct. 1998) (same)), *aff'd*, 35 F. App'x 357 (3d Cir. 2002). As a general matter, subject only to ten specific statutory exceptions not applicable here, this sovereign immunity bars state law tort claims like the one alleged here, since Commonwealth employees are immune from liability for

either negligence or intentional torts.[2] *McGrath*, 67 F.Supp.2d at 511, *aff'd*, 35 F. App'x 357 (3d Cir. 2002). Therefore, the Court will dismiss this claim.

## IV. <u>Leave to Amend</u>

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). For the reasons set forth above, Perez's claims are factually and legally flawed; thus, the Court concludes that curative amendment would be futile. Moreover, Perez failed to oppose Defendants' motion to dismiss, despite be afforded an extension of time to do so.

---

[2] The ten categories for which sovereign immunity will not apply are: (1) vehicles in the possession or control of a Commonwealth party; (2) acts of health care employees of Commonwealth agency medical facilities or institutions; (3) the care, custody, or control of personal property; (4) a dangerous condition of Commonwealth agency real estate and sidewalks; (5) dangerous conditions of highways created by potholes or sinkholes; (6) the care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids and vaccines; and (10) sexual abuse. *See* 42 PA. CONS. STAT. ANN. § 8522(b).

## V. Conclusion

The Court will grant Defendants' motion (Doc. 13) to dismiss. A separate Order shall issue.

*Robert D. Mariani*
United States District Judge

Dated: May 8, 2023